IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRIC OFALASKA

IN THE MATTER OF THE ARREST OF

LEO JAMES CHAPLIN

Case No.: 3:17-mj-00282-KFM

## AFFIDAVIT IN SUPPORT OF
## AN APPLICATION FOR AN ARREST WARRANT

I, JOLENE GOEDEN, being first duly sworn, hereby depose and state as follows:

### INTRODUCTION AND TASK FORCE OFFICER BACKGROUND

1. I am a Special Agent (SA) with the Federal Bureau of Investigation (FBI), and have been since April 2004. In this assignment I have investigated a number of violations of United States Code. For the past several years, I have specialized in the investigation of crimes against children including but not limited to kidnapping, internet crimes against children, online enticement of children, child pornography possession and distribution, and commercial sexual exploitation of children. Further, I have conducted and participated in a large number of search warrants, arrest warrants, and interviews of people involved in crimes against children. I am a member of the Alaska Internet Crimes Against Children (ICAC) Task Force and routinely discuss the aspects of investigating



JUN 2 3 2017

1

these types of cases with other law enforcement and prosecutors. I have also attended trainings specific to the use of computers in the commission of crimes against children.

2. This arrest warrant seeks authorization to arrest LEO JAMES CHAPLIN (hereinafter "SUBJECT"), for a violation of 18 U.S.C. § 1204(a), International Parental Kidnapping. For the reasons stated herein, I submit that there is probable cause to believe that within the District of Alaska, LEO JAMES CHAPLIN has committed a violation of 18 U.S.C. § 1204(a) and that an arrest warrant should issue.

3. The statements in this affidavit are based in part on information provided to me by other law enforcement officers, police reports and on my own investigation of this matter, and also based on State of Alaska Court orders in Case # 3AN-15-04916CI. Since this affidavit is being submitted for the limited purpose of securing a search warrant, I have not included each and every fact known to me concerning this investigation. I have only set forth the facts that I believe are necessary to establish probable cause to believe that evidence, fruits, and instrumentalities of the violations of 18 U.S.C. § 1204(a).

## RELEVANT STATUTES

4. This investigation concerns alleged violations of 18 U.S.C. § 1204(a), This statute is as follows:

    a. Title 18, United States Code, Section 1204(a), prohibits a person from removing a child from the United States, or attempting to do so, or


JUN 2 3 2017

2

retaining a child (who has been in the United States) outside the United States with intent to obstruct the lawful exercise of parental rights.

## PROBABLE CAUSE

5. Between on or about November 24, 2014, and continuing until the present, in the District of Alaska and elsewhere, the SUBJECT did knowingly retain children, "Juvenile A" and "Juvenile B", outside of the United States, who previously had been in the United States, with the intent to obstruct the lawful exercise of the parental rights of the juveniles mother (hereinafter the "Mother").

6. The SUBJECT is a U.S. Citizen who resided in Anchorage, Alaska until November 2014 with the Mother, Juvenile A, and Juvenile B. In November 2014, they decided to take their children to the Philippines to visit family of the Mother and work on their marriage. Prior to this trip, Chaplin and the Mother were experiencing some marital issues. They all had return tickets to Alaska for February 2015.

7. Soon after arriving in the Philippines, Chaplin and the Mother had a disagreement. They agreed that the Mother would travel to visit her family for a brief time. The children would stay with Chaplin. Chaplin and the Mother agreed on a date, time, and place to meet. When it came time to meet, the Mother went to the meeting location but Chaplin was not there. The Mother spent several days looking for Chaplin and the children but could not locate them. She borrowed some money and returned to Alaska on December 5, 2014. The Mother assumed

Chaplin and the children would return in February when they were originally scheduled to do so.

8. The February return date arrived and Chaplin and the children did not return to Alaska. On February 9, 2015, the Mother initiated divorce and custody proceedings in Case #3AN-15-04916CI . On this same date, Chaplin initiated child custody proceedings in the Philippines. Case #3AN-15-04916CI was initially assigned to State of Alaska Judge Corey and later transferred to Judge Herman Walker.

9. On 6/17/2015, the Mother filed a motion in Case #3AN-15-04916CI for the children to be returned from the Philippines. On 6/30/2017, Chaplin filed a motion for the State of Alaska court to decline jurisdiction. On 7/1/2015, State of Alaska Judge Corey denied Chaplin's motion regarding jurisdiction, stating the children are from Alaska and the State of Alaska has jurisdiction for the case. Chaplin was present in court with his attorney for this 7/1/2015 hearing.

10. Since his initial departure from Alaska with his family in November 2014, Chaplin has returned to Alaska two times. He was in the United States from 6/9/2015 to 7/2/2015, which allowed him to attend the 7/1/2015 hearing in person. Chaplin returned to the United States and Alaska 7/21/2014 to 8/24/2015. Based on Chaplin's testimony at various hearings in Case #3AN-15-04916CI, the purpose of these trips was for Chaplin to address matters related to closing his business in



KFM
JUN 2 3 2017

4

Alaska. Chaplin has never returned the children to Alaska since they arrived in the Philippines November 2014, at the beginning of their family trip.

11. The Mother has traveled to the Philippines twice since November 2014 to see her children. She has only been able to see them two times. The Mother most recently traveled to the Philippines and attempted to see the children on 3/21/2017. The security guard at the gate of Chaplin's house told the Mother that Chaplin was not expecting her and she had to wait. After waiting for approximately 5 hours in the rain the Mother was told she could not see the children.

12. Chaplin has been ordered by the State of Alaska court to return the children to Alaska on several occasions, as noted below.

13. SA Goeden reviewed the audio recordings of the court hearings in Case ##3AN-15-04916CI. Throughout these proceedings, Chaplin was represented by attorney Sarah Tugman of Anchorage. The Mother was represented by Jonathan Fork, also an attorney practicing in Anchorage.

14. On December 15, 2015 there was an evidentiary hearing in Case #3AN-15-04916CI. Present in the court was the Mother and her attorney and Chaplin's attorney. The court found Alaska has jurisdiction for the custody hearing and Alaska is the home state of Juvenile A and Juvenile B.


KFM
JUN 2 3 2017

5

Case 3:19-cr-00121-SLG-DMS   Document 1-1   Filed 06/23/17   Page 5 of 10

15. On December 21, 2015, there was a court hearing in which Chaplin's attorney, the Mother, and her attorney were present in the court room and Chaplin was present by telephone. The court heard arguments related to the children returning to Alaska and stated they would take it under advisement and issue a ruling prior to December 24, 20~~17~~ 15 [dates in] . On December 23, 2015, the court issued its first written ruling in this case for Chaplin to return the children by January 31, 2016.

16. On January 6, 2016, in a written order from Judge Walker responding to several motions, he ordered Chaplin to return Juvenile A and Juvenile B to Alaska to the custody of their mother by January 31, 2016. Chaplin failed to return the children by that court-ordered deadline.

17. Instead of returning the children as ordered, on January 28, 2016, Chaplin filed a notice to the State of Alaska Court that there was a Hold Departure Order issued by a Philippines court preventing him from returning the children. This Hold Departure Order is dated January 27, 2016. Judge Walker noted in a later hearing that Chaplin went to the Philippine government and requested an ex parte urgent order to prevent the children from leaving the Philippines which is what led to the issuance Hold Departure Order on January 27, 2016. Judge Walker reiterated numerous times on the court record that Chaplin requested and obtained the Hold Departure Order after Judge Walker's orders to return the children on December 23, 2015 and January 6, 2016.



KFM
JUN 2 3 2017

6

18.     On February 5, 2016, a status hearing was held in the Alaska case. Chaplin appeared telephonically for this hearing and his attorney was present in court along with the Mother's attorney. Judge Walker stated that Chaplin was in "complete disobedience" of his order. Judge Walker advised Chaplin and his attorney that the Philippines would release the children if Chaplin dismissed his custody case in the Philippines. Chaplin's attorney stated, "I don't believe he would do that." Judge Walker asked Chaplin if he would be willing to dismiss the case in the Philippines and return the children to the United States. Chaplin stated he would not dismiss his case in the Philippines and return the children to the United States. The Court requested the Mother's attorney obtain an apostille from the Lieutenant Governor's Office so that the Court could inform the Philippines court of the order that Chaplin return the children to Alaska. The State of Alaska Court sent a letter with apostille to the Philippines Court on February 29, 2016, advising them of the court order directing Chaplin to return the children to Alaska and requesting they dismiss the custody case. A certified copy of the Alaska court's order regarding the children was included in the letter to the Philippines. The State of Alaska Court did not receive a response from the Philippines Court.

19.     On March 9, 2016, a trial setting conference was held. Chaplin was present telephonically for the hearing and his attorney was present in the courtroom along with the Mother and her attorney. The State of Alaska Court ordered Chaplin to dismiss the custody case in the Philippines and return the

*KFM*

JUN 2 3 2017

7

Case 3:19-cr-00121-SLG-DMS   Document 1-1   Filed 06/23/17   Page 7 of 10

children to Alaska by March 31, 2016. Chaplin stated on the record that he understood the order. Chaplin did not dismiss the custody case and did not return the children by March 31, 2016, as ordered.

20. An evidentiary hearing was held two months later, on May 9, 2016. The Mother and her attorney appeared in person and Chaplin appeared telephonically from the Philippines and his attorney was present in the courtroom. Chaplin's attorney in the Philippines also testified telephonically. The Court determined through testimony that the Hold Departure Order was requested by Chaplin in the Philippines court only after the State of Alaska Court issued the December 23, 2015 order to return the children to Alaska and the custody of the Mother. Judge Walker found that the elements of contempt had been met and that Chaplin was in contempt of court. Judge Walker stated that Chaplin had the ability to comply with the Alaska court order to return the children but had chosen not to. Judge Walker found that Chaplin was willfully violating the courts order and found Chaplin in contempt of court. Chaplin was ordered to pay $200 per day in civil fines until the children were returned to Alaska. Judge Walker advised Chaplin he would suspend the fine if the children were returned to Alaska by May 31, 2017. At the conclusion of this hearing, Judge Walker recommended the Mother and her attorney contact the federal law enforcement to assist.

21. On May 17, 2016, State of Alaska Judge Herman Walker Jr issued the written order finding Chaplin to be in contempt of court and ordered Chaplin


JUN 2 3 2017

8

to pay $200 per day until he complied with the court order to return the children to Alaska. Judge Walker reiterated in his order that Juvenile A and Juvenile B were to be returned to the State of Alaska to the legal and physical custody of the Mother pending further orders by the State of Alaska Court.

22. On July 29, 2016, State of Alaska Judge Herman Walker Jr. found that Chaplin had not appeared – as ordered – at two other scheduled hearings on July 13, 2016, and July 26, 2016. Present in the court for the July 29, 2016 hearing were Chaplin's attorney, the Mother and her attorney. At this hearing, Chaplin's attorney asked to withdraw from the case. The Court noted that Chaplin had made it clear he no longer wanted to participate in the Alaska Court proceedings. The Court further found that "Mr. Chaplin was ordered to return the children from the Philippines. He has disobeyed this order and refused to participate any further in these court proceedings." Judge Walker then issued a Civil Bench Warrant for Chaplin that same day, July 29, 2016, for Chaplin's failure to appear at the July 13th and 26th court hearings.

//
//
//
//
//
//



## CONCLUSION

23. I submit that this affidavit supports probable cause to believe that LEO JAMES CHAPLIN has committed a violation of 18 U.S.C. § 1204(a). Accordingly, I ask that this Court authorize an arrest warrant for LEO JAMES CHAPLIN.

Signature Redacted

JOLENE GOEDEN
Special Agent, FBI
Child Exploitation Task Force

Subscribed and sworn to before me this ____ day of June, 2017

/s/ Kevin F. McCoy
United States Magistrate Judge
Signature Redacted

KEVIN F. McCOY
United States Magistrate Judge
District of Alaska
Anchorage, Alaska



JUN 2 3 2017

10